UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN W. NORRIS,

    *Plaintiff*,

v.

COMMISSIONER OF SOCIAL SECURITY,

    *Defendant*.
_____/

CASE NO. 14-13559

DISTRICT JUDGE AVERN COHN
MAGISTRATE JUDGE PATRICIA T. MORRIS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

Plaintiff Brian Norris brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner"). Norris, now appearing *pro se*, has failed to comply with the Court's orders, and has given no response to the Court's order to show cause why this case should not be dismissed. Accordingly, the Court **RECOMMENDS** that Norris' complaint (Doc. 1) be **DISMISSED WITH PREJUDICE** for failure to prosecute pursuant to Fed. R. Civ. P. 41(b) and because the ALJ's decision is supported by substantial evidence.

### II.    REPORT

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of

reviewing a final decision by the Commissioner denying Norris' claims under the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401-34, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381–85. (Doc. 3; Tr. 1-3). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 9, 12, 16).

Plaintiff Brian Norris was forty years old when he applied for benefits on May 16, 2012. (Tr. 122). These applications were denied on July 26, 2012. (Tr. 67-76). Norris requested a hearing before an Administrative Law Judge ("ALJ"), which took place before ALJ Andrew G. Sloss on April 29, 2013. (Tr. 30-42). Norris, represented by attorney Aaron Lemmens, testified, as did vocational expert ("VE") Pauline McEachin. (*Id.*). On May 10, 2013, the ALJ issued a written decision in which he found Norris not disabled. (Tr. 16-26). On July 14, 2014, the Appeals Council denied review. (Tr. 1-3). Norris filed for judicial review of that final decision on September 12, 2014. (Doc. 1).

Norris submitted his initial motion for summary judgment on December 20, 2014. (Doc. 9). That motion was signed by Richard J. Doud. (*Id.*). Upon revelation that Doud was no longer in practice, and in recognition of deficient briefs repeatedly submitted under his name by law firm Davidson, Breen, Doud, Steele & Ferguson, P.C. ("the Doud Firm"), a motion for substitution was entered on April 18, 2015, and James Smith was substituted as Norris' counsel. (Docs. 13, 14). On May 6, 2015, the Court ordered Norris to submit supplemental briefing, which was submitted on June 4, 2015. (Docs. 15, 16). On May 20, 2015, a global stay of all Social Security cases in which Doud was listed as

counsel was entered by Chief Judge Gerald Rosen pursuant to Administrative Order 15-AO-033; this stay was affirmed by a three judge panel on June 9, 2015. (Doc. 18). On October 19, 2015, a text-only order released cases covered by the stay back to the magistrate and district judges originally assigned; on November 18, 2015, the undersigned lifted the stay. (Doc. 19). That order informed Norris that the Doud Firm would no longer be representing him, and that Norris would be deemed *pro se* on December 21, 2015, if he did not obtain alternate counsel by that date. (*Id*). Further, the order informed Norris that "[o]nce new counsel is secured or the deadline lapses, whichever comes first, an amended briefing schedule w[ould] be entered." (*Id*).

On January 5, 2016, the undersigned ordered that Norris, having failed to obtain alternate counsel by the Court's deadline, was deemed *pro se*. (Doc. 20). The parties were granted "an additional 30 days to file any necessary supplemental briefings," and Norris was ordered that his "supplemental brief shall be filed on or before February 4, 2016." (*Id*). Norris did not file a supplemental brief by that date; on February 29, 2016, the Court ordered Norris to show cause by March 10, 2016, why his case should not be dismissed for want of prosecution. (Doc. 22). That deadline has come and gone, yet Norris has been absent from these proceedings since June 4, 2015. None of the Court's orders have been returned as undeliverable, indicating that Norris is in receipt of those orders, but has chosen to not abide by them.

## B.     Analysis and Conclusions

Federal Rule of Civil Procedure 41(b) grants federal courts the authority to dismiss a case for "failure of the plaintiff to prosecute or to comply with these rules or any order of the court . . . ." Fed R. Civ. P. 41(b). "This measure is available to the district court as a tool to effect 'management of its docket and avoidance of unnecessary burdens on the tax-supported courts [and] opposing parties.'" *Knoll v. American Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999) (quoting *Matter of Sanction of Baker*, 744 F.2d 1438, 1441 (10th Cir. 1984)). "Not only may a district court dismiss for want of prosecution upon motion of a defendant, but it may also *sua sponte* dismiss an action whenever necessary to 'achieve the orderly and expeditious disposition of cases.'" *Anthony v. Marion Co. Gen. Hosp.*, 617 F.2d 1164, 1167 (5th Cir. 1980) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 631 (1962)).

The Sixth Circuit is guided by four factors in determining whether a case should be dismissed for want of prosecution pursuant to Rule 41(b):

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal of the action.

*Saulsberry v. Holloway*, 622 F. App'x 542, 545 (6th Cir. 2015) (quotation omitted). Applying these factors, the Court finds that dismissal pursuant to Rule 41(b) is appropriate. Norris has been ordered to submit papers to the Court twice, on January 5, 2016, and February 29, 2016, yet has failed to make his presence known on the docket

4

since mid-2015. (Docs. 16, 20, 22). The Court's February 29, 2016, order specifically informed Norris that failure to comply could lead to dismissal. (Doc. 22). Norris had notice of these orders, which were delivered to his home address, and his failure to comply with these orders appears willful. Factors one and three thus favor dismissal. There is no indication that the Commissioner has been prejudiced by Norris' delays; factor two does not weigh in favor of dismissal. Factor four strongly supports dismissal; Norris has been totally absent from this case since the Doud Firm was terminated as his counsellors, therefore a sanction less than dismissal would be fruitless. *See Morley v. Comm'r of Soc. Sec.*, No. 12-14653, 2013 WL 2051326, at *1 (E.D. Mich. May 14, 2013) (Holding that where a *pro se* petitioner "effectively abandon[s] the case . . . dismissal is the only appropriate remedy available."). Accordingly, I recommend that the case be dismissed with prejudice for failure to prosecute.

Having reviewed the administrative record, I also conclude that the ALJ's decision was supported by substantial evidence. Norris admitted at the hearing before the ALJ that his sole health issue was "not being able to use [his] left shoulder." (Tr. 35). As a result, the Court will limit its recitation of Norris' medical history to those records which relate to his left shoulder.

Norris' injury occurred on July 17, 2008, when he fell from a porch onto his left shoulder. (Tr. 180). Upon admission to the Hurley Medical Center, he was found to have limited range of motion and tenderness in that extremity; x-rays showed evidence of acromioclavicular ("AC") joint separation. (Tr. 175-76). Results of a CT scan were found

5

to be "consistent with complete left AC join dislocation." (Tr. 197). Norris was diagnosed with third degree AC joint separation not requiring surgical intervention. (Tr. 179). On July 28, 2008, Norris had a consultation regarding his injury; he elected for nonsurgical treatment, and was given a sling. (Tr. 180). In August 2008 Norris sought treatment for shoulder and hand pain, among other ailments. (Tr. 191-93).

In October 2008 Norris sought a second opinion in light of his continuing pain and weakness in the left upper extremity. (Tr. 182). Norris showed some weakness in the left arm on rotation and abduction, along with pain and a significantly raised clavicle, though flexion and extension were normal. (*Id*.). Norris was diagnosed with third degree AC separation and probable axillary nerve neurapraxia. (Tr. 183).

In November 2008, Norris was a no-show for a scheduled MRI; a review of an electromyogram study was negative. (Tr. 181, 184).

No records appear regarding Norris' health care between late 2008 and late 2011 due to an unspecified period of incarceration. (Tr. 185). In December 2011 Norris again treated for shoulder pain and weakness, along with difficulty sleeping due to pain. (*Id*.). An x-ray showed evidence of an AC joint injury, but demonstrated no need for surgical treatment; the physician recommend that Norris try physical therapy again. (Tr. 186).

In January 2012, Norris again sought treatment for shoulder pain, stating that his prior physician advised against surgical intervention but that he "cannot live like this." (Tr. 189). Norris inquired about the possibility of applying for disability. (Tr. 190). It was

6

recommended that he seek further consultations regarding the possibility of surgical intervention. (*Id.*).

A February 2012 MRI showed widening of the AC joint on the left side, along with superior displacement of the clavicle relative to the distal acromion. (Tr. 194). However, this scan showed little change when compared to Norris' 2008 test results. (*Id.*).

In April 2012 Norris was found to have a "mild deformity about the distal clavicle with tenderness to palpation over his AC joint." (Tr. 232). He showed generalized tenderness to palpation about the trapezial and deltoid muscles, but experienced the worst tenderness at the AC joint. (*Id.*). Radiographical studies showed a 100 percent increase in the coracoclavicular distance, suggesting a type three AC joint separation. (Tr. 233). Surgery was discussed and Norris opted to proceed with that treatment. (*Id.*).

In July 2012 Norris underwent a consultative examination pursuant to his application for benefits. (Tr. 221-23). Norris reported that he was treating with physicians at the University of Michigan at that time, and that he was scheduled for surgical repair of his left shoulder on September 26, 2012. (Tr. 221). D.O. Clifford Buchman noted complaints of constant left shoulder pain, numbness in the left shoulder and hand, inability to sleep on the left side, inability to perform work overhead, inability to lift more than a half-gallon of milk, weakness when holding objects in front of himself, pain on pushing and pulling, and aggravation of pain when exposed to cold. (*Id.*). Norris reported last working in 2007. (*Id.*). Norris was able to drive, do some yard work, shower and

7

dress independently, read, watch television, and use a computer. (Tr. 222). His sole medication for treatment of pain was ibuprofen. (*Id*.). Testing with the Jamar dynamometer showed 120 pounds of strength on the right hand, but only fifty-five on the left. (*Id*.). Norris could pick up and manipulate coins with both hands. (*Id*.). Hoffman's and Babinski's signs were negative. (*Id*.). D.O. Buchman noted "significant signs of almost complete atrophy on the left deltoid," along with paresthesia in that area. (*Id*.). Norris showed no difficulty walking. (*Id*.). Biceps and forearms were identical in circumference; abduction and flexion were substantially limited on the left side; strength was decreased on the left side, with impingement; Speed's and Yeargason's signs were also negative. (*Id*.). He also ticked boxes indicating that Norris could not carry, push, or pull. (Tr. 224). D.O. Buchman concluded that Norris could sit, stand or walk freely during an eight-hour day, had no restrictions to the right arm, but could not do repetitive lifting with the left arm or any overhead work. (Tr. 223). He also found that Norris' limitations were not likely to be permanent, nor would they last more than twelve months. (*Id*.).

In October 2012 Norris underwent surgery to repair his chronic AC joint separation. (Tr. 229). Dr. Asheesh Bedi noted that Norris' "work is physical as a construction worker, and he desire [sic] surgical intervention," apparently suggesting that Norris was working in construction at the time of his surgery. (*Id*.). Surgery proceeded without complication and achieved the desired reduction in clavicle height. (Tr. 229-30).

A November 2012 follow-up appointment revealed reduction of the AC joint and no evidence of complications from surgery. (Tr. 237). Norris complained of persistent, significant pain in the shoulder despite use of a sling. (*Id*.). In January 2013 Norris was advised to "remain off work from heavy physical labor," again suggesting that he was working in some capacity. (*Id*.). It was recommended that Norris engage in an "aggressive range of motion in physical therapy," along with strengthening exercises. (Tr. 238). If, after six months, Norris' condition had not improved, pain relieving injections would be considered. (*Id*.).

In August 2013, Norris treated again with Dr. Bedi, who noted that Norris had "done well" since the surgery, but was complaining of "some pain and stiffness in the left shoulder" radiating into the posterior trapezial region and into the pectoralis, though Norris did not appear to be in distress during the examination. (Tr. 240). Dr. Bedi noted "no evidence of any deformity," and stated that the AC joint appeared well reduced. (*Id*.). Norris was non-tender to palpation over the reconstruction. (*Id*.). Dr. Bedi diagnosed Norris with "a component of an adhesive capsulitis and secondary restriction in range of motion" along with "nonspecific periscapular pain and symptoms" which he attributed to "inadequate physical therapy for range of motion and strengthening." (*Id*.). Dr. Bedi discussed the possibility of a corticosteroid injection as a means of pain relief, but Norris rejected that option for fear of needles. (*Id*.). Dr. Bedi suggested it was unlikely that Norris suffered nerve damage, but offered to order an electromyogram to rule out that

9

possibility; Norris was advised to follow-up with Dr. Bedi in six to eight weeks, though there is no indication that he did so. (*Id*.).

On May 24, 2012, Norris completed a function report in which he asserted that he was unable to work because of difficulty picking up weights over five pounds, pain in the left shoulder, difficulty raising his left arm for more than five minutes, and muscle spasms. (Tr. 153). He reported that his daily activities included reading, sitting, eating, watching television, and attending church. (Tr. 154). Norris reported that his ailment prevented him from working eight to twelve hour days, lifting weights, fishing, driving for long periods, gardening, and playing with his children. (*Id*.). He further asserted that his shoulder pain wakes him up in the middle of the night and that he has difficulty returning to sleep. (*Id*.). Norris reported experiencing no difficulty with personal care whatsoever. (*Id*.). Norris did not prepare his own meals because doing so for more than five or ten minutes caused pain. (Tr. 155). He did no house or yardwork because of pain from pushing, pulling, and lifting things for more than five minutes. (Tr. 156). He experienced difficulty driving because of pain and muscle spasms when turning car wheels. (*Id*.).

As to hobbies, Norris reported reading, watching television, weight lifting, fishing, and playing basketball, but wrote that he could no longer participate in these activities with the exception of watching television and reading because of his injury. (Tr. 157). He found it painful to "dance in the spirit" at church. (*Id*.).

Norris reported that he experience difficulty lifting, bending, reaching, completing tasks, and using his hands. (Tr. 158). He further asserted that he could only lift five pounds with his left arm, experienced difficulty bending that arm, could not work more than ten minutes without pain, and could "only physically function to [a] certain point without hurting so it's hard to follow instructions . . . ." (*Id*.). Norris could walk one mile without rest. (*Id*.). Norris reported taking only ibuprofen for his pain, and did not need a sling or other assistive device. (Tr. 159-60).

The ALJ noted that Norris' physicians generally recommended against surgical therapy to repair his shoulder injury, and instead counseled that he pursue physical therapy. (Tr. 23). The ALJ also wrote that Norris does not appear to have consistently pursued physical therapy, and indeed explicitly eschewed physical therapy. (Tr. 23, 179). Dr. Bedi counseled Norris in August 2013 that he was healing well from surgery, and that any residual pain or stiffness was attributable to inadequate physical therapy. (Tr. 240). The ALJ also notes that Norris was prescribed non-narcotic pain medication, ibuprofen, which suggests that his pain was not considered severe by his physicians. (Tr. 23, 159, 222). The ALJ further found that Norris failed to mention his pain as a disabling symptom at the hearing until he was prompted by his attorney. (Tr. 24, 36). This is particularly noteworthy because Norris asserted just moments before that he had "no other symptoms" beyond limited use of his left shoulder. (Tr. 35). Furthermore, contrary to Norris' suggestion that his injury worsened over time, the medical record shows that

11

he had substantial tenderness over the AC joint prior to surgery, but showed no tenderness in that area when examined in August 2013. (Tr. 232, 240).

The Court also notes several areas of the medical record which the ALJ did not explicitly discuss in the context of credibility, but which nevertheless support the ALJ's credibility finding. Norris reported in May 2012 that he had no problems with personal care whatsoever (Tr. 154), yet testified at the April 2013 hearing that personal care was "extremely difficult," despite no indication in the medical record that his condition deteriorated between those dates. Similarly, Norris was able to pick up coins during his July 2012 consultative examination (Tr. 224), yet alleged at the April 2013 hearing that he was unable to perform that task (Tr. 35) without any apparent deterioration in his health explaining that change. Likewise, Norris testified at the hearing that he had "no problem walking" (Tr. 36), yet upon prompting by his attorney just minutes later testified that he experienced difficulty walking for more than thirty-five minutes because of pain from his arm pulling downward (Tr. 38). The Court also notes that Norris sought out surgery in October 2012 because his "work is physical as a construction worker" (Tr. 229), and was directed to "remain off work from heavy physical labor" in January 2013 (Tr. 237); these records strongly suggest that Norris continued to work between those dates.

Plaintiff's physicians generally informed him that his left arm injury would heal without surgical intervention, and advised him to pursue physical therapy both before and after he sought out surgery. (Tr. 180, 224, 237-38). No physician suggested the use of

12

narcotic pain relievers, and Norris rejected the offer of pain relieving injections for fear of needles, further suggesting that his pain was not as severe as he alleges. (Tr. 240). While a February 2012 MRI showed a widening of AC joint separation, the deformity was nevertheless found to be "mild" in April 2012, prior to surgery. (Tr. 232). Norris' surgery was, per the objective evidence, an unqualified success. (Tr. 229-30). Norris showed signs of adhesive capsulitis in August 2013, which Dr. Bedi suggested was the result of inadequate physical therapy. Nevertheless, there is no indication that this condition produced disabling symptoms or was expected to last for more than twelve months. In any case, as discussed below, the ALJ's RFC and related hypothetical adequately accounted for Norris' alleged left arm limitations. The ALJ thus gave sufficiently specific reasons to doubt Norris' credibility, and those reasons are consistent with the record as a whole. The Court has also found several other reasons to doubt Norris' credibility, and has not found any compelling reason to overturn the ALJ's credibility finding.

### C. Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Norris' complaint (Doc. 1) be **DISMISSED WITH PREJUDICE** for failure to prosecute pursuant to Fed. R. Civ. P. 41(b) and because substantial evidence supports the ALJ's decision.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve

and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 15, 2016           S/ PATRICIA T. MORRIS
                               Patricia T. Morris
                               United States Magistrate Judge

14

**CERTIFICATION**

      I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Brian Norris at 919 Lakeside Avenue, Flint, MI 48503.

Date: March 15, 2016                                             By s/Kristen Krawczyk
                                                                     Case Manager